IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARLA C.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 2:18-cv-02017-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Marla C. brings this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g).

    Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by: (1) failing to credit Plaintiff's testimony; (2) failing to credit lay witness statements; and (3) improperly crafting Plaintiff's residual functional capacity ("RFC"). Pl.'s Br. 6–15, ECF No. 10. Because there is substantial evidence in the record to support the ALJ's findings and any errors are harmless, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB on May 4, 2015, alleging disability since September 30, 2014. Tr. 13, 130–31. She then amended her alleged onset date to April 30, 2015. Tr. 13, 137. Her claim was denied initially and upon reconsideration. Tr. 43–51, 53–64. Plaintiff timely requested a hearing before an ALJ and appeared before the Honorable Elizabeth Watson on August 16, 2017. Tr. 80–81, 13. ALJ Watson denied Plaintiff's claim by a written decision dated November 30, 2017. Tr. 10–24. Plaintiff sought review from the Appeals Council and was denied on September 24, 2018, rendering the ALJ's decision final. Tr. 1–6. Plaintiff now seeks judicial review of the ALJ's decision.

Plaintiff was 50 years old at the time of her amended alleged disability onset and 51 at the time of her hearing. *See* tr. 130, 137, 13. She completed high school and professional beauty school and has engaged in past relevant work as a cosmetologist. Tr. 140, 18. Plaintiff alleges disability due to "thoracic aortic aneurysm, Marfan Syndrome, high blood pressure, scoliosis, a labral tear with periarticular cysts of the right hip, deep vein thrombosis to both sets gastrocnemius, and soleal, right knee meniscus tear, right let [sic] gastrocnemius strain/bursitis right side leg, right groin strain/chronic muscle dysfunction, and a chorioretinal scar by macula and inferior arcada of her left eye." Pl.'s Br. 1.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

## **I. Plaintiff's Credibility**

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529(a), 416.929(a). When there is objective

medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair,* 885 F.2d at 603). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. It is proper for the ALJ to consider the objective medical evidence in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(2); 416.929(c)(2). However, an ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The Ninth Circuit has upheld negative credibility findings, however, when the claimant's statements at the hearing "do not comport with objective evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d

947, 959 (9th Cir. 2002) (citation omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citation omitted).

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 17. Plaintiff said she could not work due to her musculoskeletal and cardiovascular impairments. Tr. 139–40. She had pain, was unable to stand for long, and could not walk far or climb ladders or stairs. Tr. 140. She became fatigued, irritable, tired, tearful, and short of breath. Tr. 151. She could no longer exercise, garden, mow her lawn, stand and work all day, or walk through grocery stores. Tr. 152. She could not dance or hike and moves slowly. Tr. 156. She could still care for herself without reminders or help. Tr. 153. She prepared her own meals, did chores, drove a car, and went shopping. Tr. 153–54. She followed written and spoken instructions "excellent[ly]" and finished what she started. Tr. 156. She was "ok" at handling stress and changes in routine. Tr. 158. She stopped working due to hip pain, which prevented her from prolonged standing, and knee surgery complications. Tr. 30–31. She could only stand for 15 to 20 minutes and sit for 30 minutes. Tr. 34. She spent at least half the day reclined. Tr. 35. Injections helped her mobility, but she could not move between shots and was very uncomfortable for the first three days after getting a shot. Tr. 36–37. Her medications made her tired. Tr. 37.

The ALJ summarized the relevant medical evidence as follows. *See* tr. 17–18. In April 2015, Plaintiff told consultative medical examiner Dr. Michael Henderson, D.O., that she could only stand for 30 minutes and walk less than two blocks before needing to rest. Tr. 550. She

presented as alert, fully oriented, and in no apparent distress. Tr. 551. She did not have antalgic gait but had "nonspecific difficulty walking on heels and toes." *Id.* Her right hip extension and rotation were variable. *Id.* When unaware of testing, she could internally and externally rotate and extend normally without apparent pain. *Id.* She could spontaneously extend to zero degrees. *Id.* When aware of testing, she could not extend to zero degrees. *Id.* On repeat testing, her internal and external rotation became much more guarded. *Id.* The ALJ found that this evidence raised symptom exaggeration concerns. Tr. 18. Dr. Henderson concluded that there was no objective evidence to limit Plaintiff's sitting, standing, walking, or lifting. Tr. 552.

In April 2015, state agency medical consultant Dr. Jacqueline Farwell, M.D., found that Plaintiff was capable of medium work and could occasionally lift 50 pounds. Tr. 47, 48. In September 2015, state agency medical consultant Dr. Linda Jensen, M.D., found that Plaintiff was capable of light work and could occasionally lift 20 pounds. Tr. 60, 61. The ALJ found that Plaintiff's clinical presentation was historically inconsistent with a disabling pain condition. Tr. 18. Recent medical records described Plaintiff as "well appearing" and "in no acute distress" despite her complaints. *Id.* (citing tr. 656–75). The ALJ acknowledged that Plaintiff required regular injections to address her "burning" symptoms. Tr. 18 (citing tr. 679). The ALJ found, however, that Plaintiff's intermittent pain symptoms justified a light work restriction. Tr. 18.

Plaintiff argues that, "[b]ecause the ALJ made no finding of malingering, the ALJ was required to make specific, clear, and convincing findings to support her rejection of [Plaintiff's] testimony" and failed to do so. Pl.'s Br. 7. The ALJ did not explicitly find that Plaintiff was malingering[2] but cited evidence that Plaintiff was exaggerating her symptoms. *See* tr. 18, 551.

---

[2] "The essential feature of malingering is the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining

This is a clear and convincing reason to reject Plaintiff's subjective testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (finding that the ALJ provided a clear and convincing reason for discrediting a plaintiff's testimony where plaintiff was uncooperative during cognitive testing but cooperative when giving reasons for her inability to work).

The ALJ properly considered the objective medical evidence and contrasted it with Plaintiff's alleged symptoms. For example, Plaintiff told Dr. Henderson that she could only stand for 30 minutes and walk less than two blocks before needing to rest. Tr. 17 (citing tr. 550). Dr. Henderson found that Plaintiff was alert, fully oriented, and in no apparent distress and there was no objective evidence to limit her sitting, standing, walking, or lifting. Tr. 17–18 (citing tr. 552). This evidence also conflicts with some of Plaintiff's statements at the hearing. *See* tr. 17 (citing tr. 30–31 (stating that her hip pain prevented her from prolonged standing), 34 (stating that she could only stand for 15 to 20 minutes before having to sit down and could sit for 30 minutes before needing to change positions or get up)). The ALJ cited numerous reports from August 2015 through May 2017 where Plaintiff appeared well and in no acute distress despite her subjective pain complaints. Tr. 18 (citing tr. 656–75).

Plaintiff argues that the ALJ further erred in rejecting Plaintiff's credibility on the basis of her daily activities. Pl.'s Br. 8. A claimant's daily activities may be grounds for an adverse credibility finding if she "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Fair*, 885 F.2d at 603); *see also Burch v.*

---

financial compensation, evading criminal prosecution, or obtaining drugs." Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V"), May 2013 (February 22, 2017), http://dsm.psychiatryonline.org/doi/10.1176/appi.books.9780890425596.VandZcodes.

*Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113 (citing *Turner v. Comm'r of Sec. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Here, the ALJ found that Plaintiff could care for herself, prepare meals, do household chores, drive, shop, get along with others, follow written and spoken instructions, finish what she started, and handle stress and changes in routine. Tr. 17 (citing tr. 153–54, 156, 158).

Plaintiff argues that the ALJ failed to: (1) show that Plaintiff's activities were inconsistent with any specific symptoms, testimony, or reports; (2) show that her activities require light level lifting, standing, or walking; (3) acknowledge her reported need for breaks; and (4) find that she spent a "substantial part" of her day "engaged in activities inconsistent with disabling limitations." Pl.'s Br. 8–10. The ALJ failed to explain how Plaintiff's activities conflicted with Plaintiff's statements but noted that she said she could not work due to her impairments. *See* tr. 17 (citing tr. 139–40). Although Plaintiff's activities of daily living suggest some difficulty functioning, they are "grounds for discrediting [her] testimony to the extent that they contradict claims of a totally debilitating impairment." *See Molina*, 674 F.3d at 1113 (citing *Turner*, 613 F.3d at 1225). The Court agrees, however, that Plaintiff's activities do not demonstrate that she is capable of light work, namely "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing" or "sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." *See* SSR 83-10, at *5.

The Court also agrees that the ALJ failed to acknowledge Plaintiffs' reported need for breaks when doing activities, but Plaintiff did not say how frequently she takes breaks. *See* Pl.'s Br. 8. Plaintiff said she does chores at her leisure and sits frequently, needs to stop and sit when her pain begins, and does three or four hours of house and hard work with breaks. Tr. 35, 154, 237. Moreover, the ALJ noted that Plaintiff's "inability to work without some pain and discomfort . . . does not necessarily satisfy the test for disability under the provisions of the Act." Tr. 17. Finally, the ALJ did not find that Plaintiff spent a "substantial part" of her day "engaged in activities inconsistent with disabling limitations." *See Orn*, 495 F.3d at 639 (quoting *Fair*, 885 F.2d at 603). Regardless, Plaintiff's activities contradict claims of total debilitation, as explained above. *See Molina*, 674 F.3d at 1113 (citing *Turner*, 613 F.3d at 1225). Because the ALJ had other clear and convincing reasons to reject Plaintiff's credibility, these errors are harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an error is harmless if it is "inconsequential to the ultimate nondisability determination.").

Substantial evidence exists in the record to support the ALJ's finding that Plaintiff was not entirely credible. Therefore, the ALJ did not err in discounting Plaintiff's credibility. Because the ALJ's errors, if any, were harmless, this Court does not reach Plaintiff's credit-as-true arguments.

## II. Lay Witness Statements

Plaintiff next argues that the ALJ failed to provide specific, germane reasons to reject Ron G.'s lay witness statements. Pl.'s Br. 11–15. Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."

*Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members." (citation omitted)). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Here, Plaintiff's partner—Ron G.—made statements in March 2015 and August 2017 that described even greater limitations than Plaintiff alleged. *Compare* tr. 235–42, 216 *with* 140–63, 151–62. Ron G. said Plaintiff has limited ability to walk and stand and is in constant pain. Tr. 235. She cannot do anything as she used to, including shopping, working, walking, and standing for long periods. Tr. 236. Sharp pains wake her and lying in one position pains her. *Id.* She has no problems with personal care, prepares her own meals, can do house and yard work with breaks, cannot walk or stand too much, and goes outside daily. Tr. 236–37. She walks, drives a car, goes out alone, and shops once or twice weekly. Tr. 238. She watches television, cooks, crafts, and cans. Tr. 239. She cannot stoop, lift, dance, or hike. *Id.* She can lift up to 10 pounds and do limited bending, short periods of standing, short reaching, little walking, and little stair climbing. Tr. 240. She cannot squat or kneel. *Id.* She can walk one block before needing to stop and rest for 15 minutes. *Id.* She can pay attention, finishes what she starts, and follows written

and spoken instructions well. *Id.* She does not handle stress well but handles changes in routine "ok." Tr. 241. Her medications make her tired and sleepy. *Id.*

Plaintiff has difficulty standing, sitting, or walking for any length of time, particularly on concrete or cement. Tr. 216. She has to shift while sitting and spends a large part of her day reclining. *Id.* It takes Ron G. and Plaintiff 60 minutes to drive to the grocery store, which wears Plaintiff out, so they have to shop quickly. *Id.* She has to lean on the shopping cart and cannot push it if it becomes too heavy. *Id.* Sometimes she sits and rests. *Id.* Ron G. does most of the household chores and Plaintiff is only able to cook meals. *Id.* When she does light housekeeping, she has to take a break soon after she starts. *Id.* She sleeps much more than Ron G. does. *Id.* She awakes with sharp pains in the middle of the night at times. *Id.* Sometimes she cries due to pain. *Id.* If she overdoes it, it can take a couple of days for her to recover. *Id.* She used to run a business, garden, hike, craft, and dance, but cannot now due to pain. *Id.* She mostly stays in the house. *Id.* Pain makes her short-tempered and irritable at times, and she always seems to be frustrated. *Id.* Injections help for a month or two, but her mobility is still very limited. *Id.*

The ALJ gave Ron G.'s statements partial weight. Tr. 18. The ALJ found, however, that Plaintiff repeatedly showed no pain or fatigue symptoms in clinical settings, as explained above, and the RFC accounted for her intermittent pain and cardiovascular-related fatigue. *Id.* Plaintiff argues that the ALJ rejected Ron G.'s testimony on impermissible grounds and inaccurately characterized the record. Pl.'s Br. 11. An ALJ may not reject a lay witness's testimony because it is not supported by evidence. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009). An ALJ may, however, discount lay testimony that conflicts with the medical evidence in the record. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted). An ALJ may also discount

lay testimony that is substantially similar to a claimant's validly discredited allegations. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Here, as with Plaintiff's credibility, the ALJ properly rejected Ron G.'s statements because they conflicted with objective medical evidence showing that Plaintiff repeatedly showed no pain or fatigue symptoms. *See* tr. 18. Plaintiff argues that the record demonstrates otherwise. *See* Pl.'s Br. 12–14 (citing tr. 391–92, 251, 255, 328, 408, 450, 260, 287–96, 503–04, 670, 715, 711–12, 693, 703, 647, 661, 657–58). Many reports that Plaintiff cites are from August 2013 to February 2015 and, as such, pre-date her amended alleged onset date (April 30, 2015). *See* tr. 391–92, 251, 255, 328, 408, 450, 260, 503–04, 670; *see also* tr. 13, 137. One report is simply Plaintiff's self-assessment. *See* tr. 287–96. The other reports are mixed. In January 2016, Plaintiff complained of chronic right hip pain. Tr. 713. She had antalgic gait on the right, and an examination of the right hip revealed positive labral test, pain with resisted hip flexion, non-tenderness in the trochanteric bursal region, no pain with logrolling, and minimal groin pain with internal rotation. Tr. 715. In February 2016, Plaintiff had shortened gait to avoid right hip pain and flexion to 90 degree extension on the right compared to 110 on the left. Tr. 711. She had mild pain with all movements, which worsened with flexion, and pain with right hip anterior and posterior impingement tests. Tr. 711–12. A detailed neurovascular exam revealed normal lower extremities. Tr. 712.

In May and December of 2016, Plaintiff appeared well and in no acute distress. Tr. 703, 693. Her right gluteal region was tender to palpation and her right trochanteric bursa was "exquisitely" tender to palpation. *Id.* She had pain-free range of motion of major joints, though her right hip range of motion was "incredibly limited" due to groin pain. *Id.* She had positive

sacroiliac joint and FABER maneuvers on the right. *Id.* In August 2015, she continued to have significant hip pain but was only seen for aortic aneurysm. Tr. 647. In September 2016, she had groin pain, hip pain, and trochanteric bursitis. Tr. 661. Her hip pain improved with injections and diclofenac. *Id.* In May 2017, she had a follow-up for chronic hip pain, palpitations, and allergies but appeared well and was in no acute distress. Tr. 657–58. Even considering this additional medical evidence, the ALJ cited substantial evidence to support his finding that Plaintiff had only intermittent pain and fatigue, which the RFC accounts for. *See* tr. 17–18.

The ALJ provided germane and specific reasons for discounting Ron G.'s statements. *See Bruce*, 557 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054). Because the ALJ did not err in discrediting Plaintiff and Ron G.'s testimony, the Court finds that the ALJ's RFC finding is supported by substantial evidence in the record.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 7th day of February, 2020.

                                                    s/ Michael J. McShane
                                                    Michael J. McShane
                                                    United States District Judge